**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM CAMPBELL, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CV-00013-JAR |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of a decision of the Commissioner of Social Security denying Plaintiff William Campbell's application for disability insurance benefits under Title II of the Social Security Act.  For the reasons discussed below, the Commissioner's decision will be affirmed.

**I.      BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (Doc. 12-1) and the Commissioner's Response thereto and Statement of Additional Facts (Docs. 13-1 and 13-2).  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

On March 23, 2020, Plaintiff protectively filed an application for disability benefits due to post-traumatic stress disorder (PTSD), degenerative disc disease, rheumatoid arthritis, and diabetes, alleging an onset date of May 15, 2019. (Doc. 9-6 at p. 7, Doc. 9-7 at p.18).[1]  His application was initially denied on September 28, 2020. (Doc. 9-5 at p. 4)  Plaintiff then requested

---

[1]      The ALJ's decision indicates a filing date of April 3, 2020.  This discrepancy does not affect the Court's review.

and was granted a hearing before an administrative law judge (ALJ).  A hearing was held on March 30, 2021.  Plaintiff was represented by counsel, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert (VE).  (Doc. 9-3 at pp. 44-66).

After considering the hearing testimony, the medical evidence, and other evidence in the record, on April 22, 2022, the ALJ issued a written decision denying Plaintiff's application. (Doc. 9-3 at pp. 21-37).  On December 2, 2021, the Appeals Council denied Plaintiff's request for review. (Doc. 9-3 at pp. 2-5).   Thus, the decision of the ALJ stands as the final decision of the Commissioner.  Plaintiff filed this appeal on January 31, 2022, and the case has been fully briefed.

## II.     LEGAL STANDARDS

Statutory Framework

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A), 20 C.F.R. § 404.1505. The Social Security Administration (SSA) has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends, and the claimant is determined to be not disabled. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

A special technique is used to determine the severity of mental disorders, which are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present,

meaning a claimant has one "extreme" or two "marked" functional limitations in his or her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  A "marked" limitation means a serious limitation in functioning independently, appropriately, effectively, and on a sustained basis in the given area.  An "extreme" limitation means an inability to function independently, appropriately, effectively, and on a sustained basis in that area.

When paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "paragraph C criteria" used to evaluate "serious and persistent" mental disorders.  Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history, and the process is complete.  *Id.*  If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e), 20 C.F.R. § 404.1520a(c)(3).  The RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. SSR 96–8p.

At step four, the ALJ must determine whether, given the RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a) and (f), 416.920(f). If the claimant can still perform past relevant work, he is not disabled.  If the claimant cannot perform past work, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he is disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove that he is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).   At step five, the burden shifts to the Commissioner to establish that claimant maintains the RFC to perform a significant number of jobs within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). The ultimate burden of persuasion to prove disability remains with the claimant.  *Harris v. Barnhart*, 356 F.3d 926, 931 n. 2 (8th Cir. 2004).

**Standard of Review**

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion.  *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  The Court may not reverse merely because substantial

evidence exists in the record that would support a contrary outcome or because the Court would have decided differently.  *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006).

In other words, this Court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*  The Court defers heavily to the findings and conclusions of the SSA.  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

## III.    DISCUSSION

In his sole point of error, Plaintiff asserts that the ALJ's determination of the RFC, particularly with respect to his mental limitations, is not supported by substantial evidence because the record lacks medical opinion evidence regarding Plaintiff's mental impairments and corresponding functional limitations.[2]   Plaintiff asks that the ALJ's decision be reversed and remanded for further development of the record on this issue.  In response, the Commissioner maintains that the evidence is sufficient to support the ALJ's decision even without a formal medical opinion.  Upon review of the record, the Court cannot say that the ALJ's decision falls outside the available zone of choice.

### Evidence in the Record

The record reflects the following as relevant to Plaintiff's mental impairments.  Plaintiff was born in 1968, completed high school and some vocational training, and served in the armed forces during the Gulf War, returning from duty in 1991.  After his military service, he experienced PTSD symptoms for decades but did not seek treatment until 2016, and then only for two months. The record reflects some earnings in most years since the time of his service, primarily as a trucker,

---

[2]      Plaintiff does not challenge the decision with respect to his physical RFC.  As such, the Court reviews the decision and the record only as relevant to Plaintiff's mental impairments and limitations.

until May 2019.   (Doc. 9-6 pp. 12-19).  The record does not specifically identify an event related

to the alleged onset date of May 15, 2019.   However, on June 6, 2019, when Plaintiff sought

treatment at the Veterans Administration (VA) for nightmares, flashbacks, and auditory

hallucinations (saying "kill the ragheads"), he reported having recently wrecked his truck and lost

his job. (Doc. 9-8 at p. 159, 128).  He also cited the recent death of his brother.  He was admitted

to inpatient psychiatry and diagnosed with a brief psychotic disorder.  He was started on Prazosin

and Risperdal with good effect.  (Doc. 9-8 at p. 50).  His symptoms subsided and he was discharged

on June 10, 2019.

On June 17, 2019, he had an initial outpatient evaluation and was diagnosed with PTSD.

(Doc. 9-8 at p. 82).  The following month, he met with a counselor and started therapy.  His mental

status examination revealed depressed mood but was otherwise normal.  (Doc. 9-8 at p. 61).  His

Prazosin was increased, and he started on Duloxetine.  (*Id*. at p. 62).  Plaintiff continued therapy

in August and September 2019.  In September, Plaintiff reported that he was "still depressed, but

it comes and goes."  (Doc. 9-8 at p. 55).  He reported that his auditory hallucinations and

nightmares were less intense but he still had trouble sleeping.  His medications were adjusted, and

Abilify was added to boost his mood and address psychosis.   In late October 2019, Plaintiff

reported that the Abilify was effective.  The "voices" were less intense, he was sleeping better, and

his mood was better because his application for service-connected VA benefits had been approved.

(Doc. 9-8 at p. 53).  The ALJ found it notable that the record contains no further evidence of mental

health treatment after Plaintiff was approved for service-connected disability in October 2019.

(Doc. 9-3 at p. 30).

Plaintiff had been experiencing spinal and shoulder pain for some time and saw a

neurosurgeon in March 2020, shortly after which he filed an application for SSA benefits.  Records

from April 2020 indicate that he had not taken his medications in two months and was depressed

and hearing voices. He was to resume medication and therapy.  (Doc. 9-8 at p. 52.)  Notes from a follow-up call in June 2020 reflect the same treatment plan.  (Doc. 9-9 at p. 27).  Although Plaintiff was irritable due to his physical pain, his limited mental health examination was normal.  Plaintiff had another telephone consultation in October 2020.  He reported non-compliance with his medications and frustration due to ongoing pain and a house flood, although otherwise his mental health examination was normal.  (Doc. 9-10 at p. 62).  He was again advised to take his medication and resume therapy.

In November 2020, Plaintiff's wife of 18 years left him.  In January 2021, Plaintiff called the Veteran's Crisis Line seeking support due to the stress of divorce exacerbating his PTSD.  (Doc. 9-10 at p. 48).  He reported non-compliance with his medications and did not want to pursue counseling but agreed to try a veteran support network.  Plaintiff indicated that he had an appointment with his psychiatrist the following month, on February 4, 2021.  The record does not contain notes of that visit.

At the hearing before the ALJ in March 2021, Plaintiff testified that he lived alone in his sister's house, was not currently driving, and took public transportation to get around.  (Doc. 9-3 at pp. 50.  He said he was unable to work because he had problems being around people and heard voices in his head, making him aggravated but not violent.  (*Id*. at p. 59).  He said he received treatment and medication through the VA but it did not seem to help.  He reported doing household chores including cleaning, sweeping, washing dishes, taking out the trash, shopping, and cooking.  He said he had a hard time concentrating on tasks such as reading cooking instructions.  When prompted for further information about his mental problems preventing him from being able to work, Plaintiff stated that he loses his concentration when around people and needs to get away.  (*Id*. at 60).

Plaintiff's counsel at the hearing confirmed that the medical record was complete.  (Doc.

9-3 at p. 46).  However, Plaintiff failed to submit a function report or other functional information despite multiple requests.   As a result, the agency's evaluation was limited to the medical evidence in the record, which the consulting psychologist deemed insufficient to rate the severity of Plaintiff's "paragraph B" limitations.  The consultant noted, "[T]he evidence necessary for a full medical review is not available due to the claimant's failure to cooperate with returning requested functional information." (Doc.9-4 at p. 13).

**Decision of the ALJ**

After finding at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, the ALJ determined at step two that Plaintiff suffered from the following severe impairments: diabetes mellitus, degenerative joint disease of the shoulders with right-sided adhesive capsulitis, trigger fingers in the right hand, degenerative disc disease, hypertension, PTSD, and major depressive disorder (MDD).  (Doc. 9-3 at p. 23).  However, the ALJ found at step three that no impairment or combination of impairments met or medically equaled a listed impairment.  (*Id*. at p. 24).  Plaintiff does not challenge the ALJ's decision with respect to his physical impairments.

With respect to Plaintiff's mental impairments at issue here,[3] and applying "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in adapting and managing himself and moderate limitations in the other three categories (i.e., understanding, remembering, or applying information; interacting with others; and concentration, persistence, and pace).[4]  (*Id*. at 26).  The ALJ also noted that "paragraph C" criteria were not present.

---

[3]     PTSD falls under listing 12.15 (trauma and stressor-related disorders).  MDD falls under listing 12.04 (depressive, bipolar, and related disorders).

[4]     "Moderate" means that a claimant's ability to function independently, appropriately, effectively, and on a sustained basis is "fair," while "mild" means only "slightly limited."  Program Operations Manual System (POMS) 34001.032.

In finding that Plaintiff had only mild limitations in adapting and managing himself, the ALJ acknowledged Plaintiff's difficult moods but noted that he was able to handle self-care and had no problem getting along with medical personnel.  (Doc. 9-3 at p. 25).  In finding moderate limitations in understanding, remembering, and applying information, the ALJ acknowledged Plaintiff's difficulties in following instructions, completing tasks, and remembering to take his medications, but she noted that he was able to perform simple maintenance, prepare meals, attend medical appointments, provide his work and health history, take public transportation, shop, and read.  She further noted that Plaintiff did not claim any long- or short-term memory loss.  (*Id.*)

In finding moderate limitations in Plaintiff's ability to interact with others, the ALJ acknowledged Plaintiff's auditory hallucinations but noted that Plaintiff was able to shop, spend time with friends and family, interact with health care providers, and appeared comfortable at appointments.  (*Id.*)  In finding moderate limitations in Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ noted that Plaintiff is able to prepare meals, watch TV, and read.  (*Id.*)  The record shows that he was also able to look for work, do puzzles, and play games on his phone. (Doc. 9-8 at pp. 56, 144, 158).

The ALJ did not agree with the agency's psychological consultant that there was insufficient evidence to rate Plaintiff's limitations.  Instead, she found the existing record sufficient to determine the severity of Plaintiff's impairments.  While acknowledging some decompensation prompting his initial hospitalization, attributable to situational stressors, the ALJ noted that Plaintiff recovered with treatment and has been largely stable, with normal mental examinations. She further noted that Plaintiff has had symptoms of PTSD since 1991 but did not seek treatment until briefly in 2016 and more recently in 2019.  She also noted that Plaintiff has often been non-compliant with medications and therapy, suggesting that his symptoms are not disabling.  Overall, the ALJ found that Plaintiff's subjective complaints about the intensity, persistence, and limiting

9

effects of his mental impairments were belied by the medical evidence, his failure to seek and comply with treatment, and his own account of his daily activities.

Based on the record and Plaintiff's hearing testimony, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [He can] frequently reach, handle, and finger; only occasionally reach overhead with the right upper extremity; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; no concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation; is able to learn, remember, and carry out simple, routine tasks; is able to use reason and judgment to make simple, routine, work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only gradual changes in job setting and duties; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; can have no contact with the general public; and is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

At step four, the ALJ noted that Plaintiff had past relevant work as a truck driver but could no longer perform this work given the RFC. (*Id*. at p. 35). At step five, considering Plaintiff's age, education, work experience, and RFC, and relying on the VE's testimony, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, such as merchandise marker (DOT 209.587-034), electrical assembler (DOT 729.687-010), and garment sorter (DOT 222.687-014). (*Id*. at 36). Accordingly, the ALJ found Plaintiff was not disabled. (*Id*. at 37).

## IV.   DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the record lacks any medical opinion evidence supporting her RFC determination. As previously noted, the agency consulting psychologist found the medical evidence insufficient to opine on the

10

severity of Plaintiff's mental impairments due to Plaintiff's own failure to submit functional information.  The ALJ nonetheless found the medical record sufficient to rate Plaintiff's functional limitations as moderate in three "paragraph B" criteria and mild in the fourth.  Thus, the question for this Court is whether the ALJ erred in determining the RFC based on the record before her rather than soliciting additional evidence.  Although the agency consultant's abstention gives the Court some pause, after careful consideration, ultimately the Court concludes that the ALJ's determination was not clearly erroneous or prejudicial in this particular case.

To be sure, an ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press his case. *Vossen v. Astrue*, 612 F.3d at 1016.  When the evidence is insufficient to determine disability, the agency may request additional evidence, ask the claimant to undergo a consultative examination, or ask the claimant or others for more information.  20 C.F.R. § 404.1520b(b).  When, despite efforts to obtain additional evidence, the evidence is still insufficient to determine disability, the agency will make a determination based on the evidence available.  *Id*.  This is essentially what the ALJ did here.

The evidence available shows that Plaintiff lived and worked with PTSD symptoms for decades without seeking sustained treatment or disability benefits until he lost his job in May 2019, his alleged onset date.  Medical records indicate that Plaintiff's acute distress in June 2019, when he was hospitalized and fully evaluated, was attributable to the situational factors of losing his brother, wrecking his truck, and losing his job all around the same time.  Once diagnosed, his symptoms subsided with medication and therapy and worsened during periods of non-compliance.  If an impairment can be controlled by treatment and medication, it cannot be considered disabling.  *Hensley v. Colvin*, 829 F.3d 926, 934-35 (8th Cir. 2016) (where claimant suffered from PTSD).  The medical evidence further reflects that Plaintiff's mental status examinations consistently

11

indicated full cognition, fair grooming, cooperative behavior, good eye contact, sustained attention, normal speech, and logical thought process.

Additionally, Plaintiff's own account of his personal activities belied his claims of a disabling impairment. Though a person's ability to engage in chores or hobbies does not demonstrate an ability to work, *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000), it is proper for an ALJ to consider a claimant's activities for purposes of assessing the credibility of his claims of incapacity. *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018). This is what the ALJ did here in finding that Plaintiff's daily activities were inconsistent with a total inability to work. "Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[5]

At bottom, Plaintiff appears to fault the ALJ for not requiring him to undergo a consultative examination despite his failure to submit a function report. The Court recognizes that an ALJ should seek clarifying evidence when a crucial issue is undeveloped. *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004) (reversing where failure to elicit additional evidence might have altered the outcome). But a claimant's failure to provide medical evidence should not be held against the ALJ when there is medical evidence that supports the ALJ's decision. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (where record was silent about work-related restrictions). There is no requirement that an RFC finding be supported by a medical opinion as long as it is supported by some evidence in the record. *Hensley v. Colvin*, 829 F.3d at 932. And reversal for failure to develop the record is warranted only when such failure is unfair or prejudicial. *Stringer v. Berryhill*, 700 Fed. Appx. 566, 567 (8th Cir. 2017) (where there were no medical opinions, and

---

[5]     Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective complaints.

the medical evidence would have supported even a less restrictive RFC).

There is no prejudice here.  If anything, the ALJ accorded Plaintiff the benefit of doubt by rating his mental impairments as moderate in three categories despite his having worked for three decades with the same symptoms prior to the alleged onset date.  Further, the ALJ did not disregard Plaintiff's mental limitations but instead carefully accommodated them in the RFC by restricting work to simple, routine tasks with only gradual changes in setting and duties, no contact with the public, and only occasional interaction with coworkers and supervisors.  This is a proper exercise of the ALJ's discretion.

Ultimately, it is the claimant's burden to prove that he is disabled.  *Vossen*, 612 F.3d at 1016.  Plaintiff had the opportunity to submit additional evidence but failed to do so.  Substantial evidence is less than a preponderance but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion.  *Sloan*, 933 F.3d at 949.  The Court finds the present record adequate to support the ALJ's determination of Plaintiff's RFC here.

## V.   CONCLUSION

The Court recognizes the position of the consulting psychologist finding the evidence insufficient for a formal opinion, absent Plaintiff's functional information.  However, based on the entirety of the record, the Court finds no unfairness or prejudice in the ALJ opting not to order a consultative examination or other supplements in this particular case.  Plaintiff failed to respond to multiple requests for information, and, notably, Plaintiff was represented by counsel, who confirmed the completeness of the record during the administrative hearing.  As such, the ALJ made a determination based on the evidence before her, as permitted by agency regulation.  *See* 20 C.F.R. § 404.1520b(b)(3).  That evidence supports the RFC, which is appropriately tailored to accommodate Plaintiff's mental limitations.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 21st day of February 2023.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE